Good morning. May it please the Court. My name is Stephen Witchley, and I represent Mr. Gaines, who is the appellant in this case. I'm going to try to reserve one minute for rebuttal argument. Sean Gaines is presently serving a 17-year prison sentence. In fact, he's completed already six years of that sentence in a case in which a questionable show-up identification procedure was the centerpiece of the prosecution's case against him. Yet Mr. Gaines has never had an evidentiary hearing in any court, either at the state or the federal level, to actually litigate the merits of the claim of whether that identification procedure violated his right to due process of law. The substance of Mr. Gaines' claim in his habeas petition was ineffective assistance of counsel. His trial counsel had actually noted a motion to suppress the identification at his trial. The trial counsel was prohibited from arguing that motion by the trial court because he had defaulted on the issue. He failed to follow a state court rule which required him to file a written brief regarding the identification issue. After Mr. Gaines was convicted, he then asked the trial court for new counsel to litigate a motion for a new trial on the very same issue. That motion was summarily denied. In post-conviction proceedings, Mr. Gaines, both in his opening brief and his reply brief when he was proceeding pro se as an in-custody inmate, requested the state court to grant him an evidentiary hearing to appoint him counsel to litigate the issue of the suggestiveness of the identification procedure at trial. What facts are in dispute? Excuse me? What facts are in dispute over the ---- I mean, what would be the purpose of an evidentiary hearing? Well, you know, the Court immediately has taken me into what I consider to be the catch-22 of this case. The facts were not ---- No, it's a simple question. What facts are in, you know, what ---- the purpose for an evidentiary ---- you just don't have an evidentiary hearing to be having an evidentiary hearing. There needs to be a reason for it. So usually the usual reason is, is that there is a fact, a critical fact, that if you were ---- that if the fact were decided in your favor, that it might suggest you're entitled to some sort of relief. So I'm asking you, what fact or facts are in dispute that need to be resolved by a trier of fact? Well, the fact that's in dispute is whether the identification procedure itself was so suggestive as to create a risk of irreparable misidentification. Well, that's a ---- isn't that a conclusion? What facts about the show-up are in dispute? The facts that we know ---- No, that's not my question. That's not ---- you're not answering my question. What facts about the show-up are in dispute? Whether Ms. Rutherford, the eyewitness in the case, was unduly influenced by the conduct of the police officers. Historically, what happened? What do we know what happened? Okay. What we know about what happened is that the witness in this case was transported to the scene where Mr. Gaines was waiting in handcuffs next to a police car. She was incorrectly told at some point during that process, and that's unclear from the record, that Mr. Gaines and his companion had been stopped in a stolen car. That, in fact, was not true. He wasn't stopped in a stolen car at all. So she's given information on the way that, in fact, the person she's about to look at is a criminal or has been engaged in criminal activity. That statement was untrue. That sounds like that's pretty suggestive right there. Yeah. I believe it's suggestive, but at the same time, you know, this was not fully developed or argued in the trial court because trial counsel falls on that. Okay. So what she was told by the officer, then, from your perspective, is a fact that's in dispute. Yeah. The reason I'm hesitating is because I'm having trouble with your use of the word dispute. It's a fact that's in the record, but it wasn't explored. Why are we going to have a hearing if it's not a ---- what's the purpose of a hearing? I don't know if that fact is in dispute or not from the perspective of the government. Okay. Give me another fact that you think is in dispute. Another fact that's in dispute is whether the ---- that would be in dispute in an evidentiary hearing is whether Ms. Rutherford, the witness, actually asked to look at Mr. Gaines a second time or whether that was suggested to her by the police. I think, you know, again, based on the scarce or record that we have, I think one could argue either way, and that was not fully developed, and that would have been critical, I think. Initially, she said that she was not sure when she was allowed to view Mr. Gaines again in handcuffs and spotlighted a second time. She was told, again, I'm inferring the best I can from the record that we have, she was told to make sure she concentrated on his face, and it was at that point that she made an identification. That sounds like that's suggested right there, but that seems to be what everybody's testifying to. You know, it's in there. It's in the record, but it's not something that was focused on by the parties. And, you know, again, I'm a bit at a loss here because if there's not, you know, if that's ---- if there's not a hearing where people are focusing on a particular issue and then arguing the law as it applies to that, to those facts ---- Well, why don't you argue the law from the facts as best ---- Go ahead. You've taken inferences in your client's favor from the facts that are in the record that she was told to look at him a second time and really concentrate on his face, that she was told incorrectly on the way over that he was engaged in other criminal behavior when he was picked up. What ---- what ---- taking the facts in your client's favor, what is your legal argument under the standard of review that we are required to apply? Given the facts that are in the record, and I've said this repeatedly in the briefing, Your Honor, I don't think we can meet the standard. I don't think there's enough there because there would have to also be an analysis of whether her in-court identification was tainted by the suggestive out-of-court identification. And there was no facts. Let me ask you this, then. What other facts, taking Judge Graber's question, facts that we know, what other facts do you think you could establish at this evidentiary hearing that would allow you to make ---- you know, to show that there's been a constitutional violation? Well, first of all, one, if I were conducting an evidentiary hearing, the first thing that I would do is obtain an expert to talk about eyewitness identification and problems of suggestibility and the difference between, you know, certitude versus accuracy. That would be the number one step that I would take. And then everything else, I think, relates to actually fleshing out the record that does exist, having Ms. Rutherford testify to focus on the fleeting duration of her incident, to focus on her limited incentive to take note of him at that time, because when she first saw him, he was walking into her storage, she was walking out, and she had no reason to believe a robbery was about to take place. Then when she saw him again, fleetingly after that, he was wearing a mask. You know, these are all things that need to be explored. And I think in many ways we're talking about a question of degree of factual exploration that was done in the trial court. And again, same thing with the conduct of the police. I would want to focus more fully on exactly what each individual officer did and the timeline of events, because it's rather confusing as you try to sift through the pretrial motions that were heard in the trial court as well as the trial testimony. So I think with the witnesses who actually testified at the trial, my answer would be it's a question of the degree of factual exploration. And then the one new fact that I think would be critical would be to seek out and to introduce expert testimony on the issue regarding the identification. Now, in dismissing Mr. Gaines's alias petition, the district court adopted the report and recommendation of the magistrate judge in this case. That report faulted Mr. Gaines again for failing to develop a factual basis of his claim in the state court as required by 28 U.S.C. Section 2254E2. And the problem that Mr. Gaines has had now at every level in which he's attempted to litigate this issue is the irony that he would be faulted for failing to develop a fact in state court or facts in state court when it was the deficient performance of his own trial counsel, which is the very heart, along with prejudice of his IAC claim, which caused his failure to develop those facts in the first place. Now, the district court's reliance on 2254E2 is reviewed by this Court de novo. Obviously, we're asking this Court to reverse the district court in that regard. It's clear from the cases that interpret 2254E2, from Williams v. Taylor in the Supreme Court on down through the decisions of this Court, that a habeas petitioner cannot be deemed to have failed to develop facts supporting a claim when he has diligently but unsuccessfully sought an evidentiary hearing in state court. You have about two-thirds of a minute left if you wanted to save some rebuttal time. I will do that. Thank you. We'll hear from Mr. Rosa. May it please the Court. My name is Greg Rosa. I'm an assistant attorney general, and I represent the respondent in this matter. Can you please keep your voice up? I will, Your Honor. Thank you. Mr. Gaines is not entitled to federal habeas relief in this case because the decisions by the Washington state courts in this case, specifically by the Washington Supreme Court of Appeals, were not contrary to or an unreasonable application of clearly established federal law. Now, going immediately to Judge Paez's questions, there is no factual dispute. Mr. Gaines indicated in his opening brief in this Court, and I believe it was at page 16, that he stated, quote, there are additional facts which were not developed in state court. There are no additional facts. He never states what additional facts those might be. There is no factual dispute in this particular case. Does the desire to present expert testimony constitute the kind of additional evidence that would be appropriate for an evidentiary hearing? I would submit no, Your Honor. Any potential testimony by an eyewitness expert, and I'm just guessing that Mr. Witching may be referring to Dr. Loftus, perhaps. I don't know. I'm just speculating. But that particular sort of evidence doesn't even speak to the issue of whether the show-up was actually impermissibly suggestive or not. It goes toward identification issues. It doesn't go toward the alleged suggestiveness, which is what Berkley is saying. Well, I understand. You know, you'll have a little bit of rebuttal time. I understood his comments to be that an expert also could talk about people's suggestibility and what kinds of activities are suggestive, as well as the sort of general unreliability, allegedly, of eyewitness testimony. So if it's that kind of expert who says procedures like X, Y, and Z are more suggestive to a witness than A, B, and L over here, is that something that should be permitted? No, Your Honor. It should not. And Mr. Gaines doesn't even get to that evidentiary hearing because he failed to establish or develop the factual basis of his claim in the State courts. Now, counsel has indicated that Mr. Gaines was prevented from doing so from allegedly deficient performance by trial counsel. But the Washington State courts is not just the Superior Court. We're talking about the Washington Court of Appeals and the Washington Supreme Court. Those two are State courts. And nothing prevented Mr. Gaines from submitting affidavits or other competent evidence to the extent that his show-up claims involved evidence outside the trial court record. In this case, this Court has spoken as much in Bajra v. Ducharme. This Court has stated expressly that to the extent that a Petitioner's claims are outside the trial court record, it's his burden to submit competent evidence, such as in the form of affidavits, which would suggest, which would support his claim. And Mr. Gaines didn't do that in the Washington Court of Appeals. What's the procedure under the Washington personal restraint system for obtaining an evidentiary hearing, as opposed to just submitting declarations? Well, Mr. Gaines upheld his end of the bargain. He did request, as counsel correctly pointed out, a reference hearing and a motion for a new trial in the Washington Court of Appeals. He upheld his end of the bargain to that extent, but he didn't support his claim in any extent other than appending two documents to his personal restraint petition. One was the omnibus application, which set out the fact that trial counsel intended to file a motion to suppress. Right. And the other was the Superior Court docket. Nothing prevented Mr. Gaines from submitting additional documents, an affidavit, say, allegedly or hypothetically by a witness who said that Mr. Gaines, or rather Ms. Rutherford, the person who identified him at the show-up, was unduly influenced. There's no evidence to support it. There's still no evidence to support it. There are no facts in dispute. Now, some of the basic facts were elicited during the course of the trial. Is that correct? That's correct. That's correct, Your Honor. In fact, it was Ms. Rutherford who requested to take a look at Mr. Gaines a second time. She testified to that during the trial. And because this Court performs a de novo review of the denial of the habeas petition, I would like the Court to review the entirety of the trial court transcript. My understanding is I submitted volume one of four volumes to the district court as part of this habeas petition and part of my answer, only because I was focusing on the colloquy between the trial court and counsel as to why counsel was not able to go forward with its motion to suppress. I have brought with me a complete copy of the trial court transcript, and I would ask that this Court review the entirety of the trial court record, which was also before the Washington Court of Appeals when it made its decision in this case. Now, as Judge Paez pointed out correctly, the purpose of an evidentiary hearing is to resolve a factual dispute. But at this point, there are no factual disputes, and there are no additional facts, although Mr. Gaines contends that there are additional facts that were not developed. And the Court has questioned counsel as to what additional facts those might be. And the response, as I understood it, was that Mr. – whether Ms. Rutherford was unduly influenced by the police, well, that's a legal argument. That's not a fact. And whether Ms. Rutherford asked to see Mr. Gaines a second time, that's already in the record. Ms. Rutherford testified that she asked to see Mr. Gaines a second time. And at the – Did the officer testify at the trial? Several officers testified at the trial, Your Honor. And did he – did he testify that he suggested that – or was he cross-examined on whether he suggested that she concentrate on the face? Ms. Rutherford – I don't recall the officer's testimony. As I said, there were three or four different officers that testified to various aspects of what each of them did during the course of the case. Ms. Rutherford testified, however, that she requested to see his face a second time or to see him a second time, to see Mr. Gaines a second time. Counsel, you – you say that the – that whether Rutherford was unduly suggested is a legal argument, right, not a factual argument. Did I understand you correctly? Yes, Your Honor. But doesn't it have a factual component if you take in expert testimony in the sense that an expert witness can say, under these facts, my opinion is that in her mind she was unduly suggested, that there was an image of the defendant implanted in her mind which she didn't have absent the suggestion. Isn't that a legal issue? Well, as you have framed it, Your Honor, it would probably be a mixed question of fact and law. Right. That would be a mixed issue. But your point is that that claim hasn't been made. The factual basis of that claim was not developed in state court. Right. And the AEDPA makes expressly clear that he is not entitled, Mr. Gaines is not entitled to an evidentiary hearing in U.S. district court unless he meets his burden. The AEDPA makes that restriction quite clear. What does the transcript say about what the witness was told on the way to the show-up? Is it – do you agree with opposing counsel as to what was said to her about Mr. Gaines having been in a stolen car and so forth? Ms. Rutherford testified that she was informed by police that the two suspects were found in a stolen car. There were two suspects, not just Mr. Gaines. And I think that's important for this Court's analysis. And Ms. Rutherford also testified subsequently that Mr. Crumble, who was Mr. Gaines' companion at the time Mr. Gaines' car was stopped by the police, she immediately had 100 percent certainty that Mr. Crumble was not the robber. So that certainly limits whatever suggestiveness there might have been based upon Ms. Rutherford being informed of the fact. And do you agree with opposing counsel that it was not true that he had been stopped in a stolen car? That is correct. The car that they were stopped was owned by Mr. Gaines. That's correct, Your Honor. And getting back to Judge Paez's earlier question, Ms. Rutherford asked to see Mr. Gaines a second time. She testified at trial that she was 90 percent certain that Mr. Gaines was the robber. After viewing him a second time, she testified she was about 100 percent. In fact, she said, quote, I'm totally sure. So when we discuss possible suggestiveness and unreliability as to this show of eyes at trial, I'm totally sure. I was about 100 percent certain. You could have theoretical suggestiveness, but either Mr. Gaines was the robber or he was not. And Ms. Rutherford testified, again, that she was 90 percent certain at first glance and 100 percent certain at her second glance. And the reason, Judge Paez, that she requested to see him a second time is because she disclosed that Mr. Gaines wore, during the course of the robbery, he wore a dark corduroy jacket. And when she saw him at the show up, he only had a white tank top. And because of the differences in the clothing, she wanted to see his face a second time. And I believe the record will reflect that. In conclusion, I would ask this Court to affirm the decision of the District Court and to dismiss Mr. Gaines' habeas petition with prejudice. And while I still have five seconds on the clock, may I present to the Court the verbatim report of proceedings from the Superior Court? Would you discuss it with Mr. Witchley to make sure that he agrees that this is the transcript? And as soon as you've both verified it, you may leave it with the court clerk at the close of the proceedings. Thank you, Your Honor. I have a copy for counsel as well. Okay. Just when we're done here, you can go out in the hall and trade copies and then leave one with Ms. Brebner afterwards. I know I only have 42 seconds. I was going to say 45. Two points that I want to make really quickly. In talking about the evidence that was introduced at trial, counsel refers to Ms. Rutherford's trial testimony that the first time she looked at Mr. Gaines, she was 90 percent sure. In a pretrial proceeding, one of the officers, and I believe his name was Subdula, testified that she said the first time she looked at Mr. Gaines, she was unsure. That in itself explains why we need an evidentiary hearing in this case. You've got one witness saying Ms. Rutherford said she was unsure. We've got Ms. Rutherford saying I was 90 percent sure. That's a significant difference. And since one of those statements was made at a pretrial hearing on another issue and one was made at trial, there was no finder of fact to resolve that factual dispute. The other issue I want to touch on real quickly is that counsel says that nothing prevented Mr. Gaines from presenting affidavits. Under state court rules, Mr. Gaines would only have had the opportunity to seek discovery in his personal restraint petition proceeding after he had been granted an evidentiary hearing. In other words, he couldn't have sought discovery in the state court prior to that. And he was an in-custody pro se petitioner when he filed those state courts. But why would he need discovery in order to hire an expert witness? I mean, did he have to discover himself? Well, again, in state court he was proceeding pro se and he was incarcerated. For him to have obtained affidavits or expert witnesses would have been virtually impossible. But that doesn't require discovery. That requires somebody like you who will go visit him and counsel him. And he doesn't have a right to counsel in the habeas proceedings, right? That's correct. Nor does he have a right to expert witnesses at public expense until and unless a reference hearing is ordered by the state court. Thank you. Thank you, counsel. We appreciate the arguments of both parties. They were very helpful. And our next set of cases.
judges: Graber, Paez, Bea